NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RONNY POLANCO,

            *Petitioner,*

  v.

UNITED STATES OF AMERICA,

            *Respondent.*

Civil Action No. 03-4843 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

      Ronny Polanco ("Polanco"), confined at FCI Fairton, has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court has considered Polanco's memorandum, the government's answer, Polanco's traverse, Polanco's motions to supplement and/or amend his motion, the government's response to the most recent of those motions, and Polanco's reply thereto. For the reasons stated herein, the § 2255 motion and the motions to amend are denied. Based on that holding, Polanco's subsequent filings seeking release and the appointment of counsel[1] are likewise denied.

### I.    Factual Background

      In January 2001, Polanco was arrested and charged with distribution and possession with intent to distribute more than 50 grams of cocaine base or "crack" cocaine. The offense carried a mandatory minimum sentence of 10 years on conviction. After Polanco pleaded not guilty, his attorney Paul Bergrin entered into plea negotiations with the government, during which Bergrin

---

[1] D.E. 21 (appointment of counsel); D.E. 22 ("Motion for Demand for Judgment"); D.E. 24 (petition for release "pendent lite"); D.E. 25 (supplement).

was provided with a record of Polanco's criminal history.  Ultimately a plea agreement was reached and Polanco pleaded guilty on March 12, 2001, before Judge Alfred J. Lechner, Jr.  (*See generally* Plea Agreement, A64-A71; *see also* Plea Tr., A81-A101.)[2]  The stipulations in the plea agreement left open the issue of whether Polanco would satisfy the criteria to be deemed a career offender.  The stipulations also provided alternative total offense levels under the United States Sentencing Guidelines ("sentencing guidelines" or "guidelines") depending upon how the Court made that determination: "the applicable Guidelines Total Offense Level is 29, unless Ronny Polanco satisfies the criteria of [U.S.S.G. Section] 4B1.1.  In the event that the sentencing court determines that Ronny Polanco is a career offender within the meaning of [Section] 4B1.1, the applicable Guidelines Total Offense Level is 34."  (Plea Agreement, A70.)  As will be seen, it is significant that at the time the agreement was struck, the parties acknowledged Polanco could face sentencing as a career offender.

In due course, the United States Probation Department ("U.S. Probation" or "probation") undertook a pre-sentence investigation.  In its draft pre-sentence report sent to the federal prosecutor and defense counsel, U.S. Probation listed as part of Polanco's past criminal history a 1994 conviction for fourth degree aggravated assault.  Under Section 4B1.2 of the guidelines, that conviction satisfied one of the required two predicate offenses for Polanco's classification as a career offender because it was considered a "crime of violence."

On June 26, 2001, while his sentencing hearing was pending, Polanco made a motion through counsel to withdraw his guilty plea on the basis that his attorney had confused the

---

[2] References to "A" are to Polanco's appendix submitted in connection with his direct appeal, Third Circuit Docket No. 01-3157.

aggravated assault conviction for a simple assault conviction.[3]  On July 12, 2001, Polanco moved for a downward departure. Judge Lechner denied Polanco's motion to withdraw his plea and imposed sentence, ruling that Polanco was a career offender.  As such, his sentence was based on a criminal history category of VI and a base offense level of 34, exposing him to a guidelines sentencing range of 262 months to 327 months.  He received 275 months.  (*See* Sentencing Tr., A8.)

Polanco filed a timely appeal and raised a single issue for review: "Where the defendant's plea had not been knowing and voluntary, in that he had been misinformed as to the sentence he would receive and denied the effective assistance of counsel, the District Court abused its discretion in denying the defendant's motion to withdraw his guilty plea."  The Third Circuit affirmed Polanco's plea and sentence, *United States v. Polanco*, 35 F. App'x 358 (3d Cir. 2002), and denied his request for a rehearing en banc, *United States v. Polanco*, No. 01-3157 (3d Cir. June 4, 2002).   The United States Supreme Court denied Polanco's petition for a writ of certiorari.  *Polanco v. United States*, 537 U.S. 940 (2002).

Before the Court is Polanco's motion under 28 U.S.C. § 2255, which makes five arguments based on the alleged ineffective assistance of his lawyer, Bergrin, in violation of the Sixth Amendment.  (*See* D.E. 1.)  Polanco has also filed several supplemental motions and a motion to amend his § 2255 motion.  Each is addressed in turn.

## II.    Discussion & Analysis

### A.    Timeliness of 28 U.S.C. § 2255 Motion and Motions to Supplement and/or Amend

---

[3] The criminal case history obtained by counsel during the plea negotiations indicated that Polanco was previously charged with violating "N.J.S.A. 2C:12-1(b)(1) – ASSLT"; however, that statute codifies aggravated assault rather than simple assault.  (Criminal History, A117.)

Polanco's initial claims based on ineffective assistance of counsel are timely, but additional contentions he has raised in supplemental motions are not.  In his first motion to supplement his § 2255 motion, dated January 12, 2004, Polanco alleges that his counsel was ineffective for failing to investigate the nature of the cocaine base in his possession at the time of his arrest.  (D.E. 4; D.E. 4-3.)  This claim is based on documents available prior to the filing deadline of one year, 28 U.S.C. § 2255(f)(1), and as a result Polanco's first motion to supplement is untimely filed.  Further, the motion to supplement does not relate back to the original filing of the § 2255 motion, as the new claim it raises "'[is not] tied to a common core of operative facts," implicating instead facts of a different "time and type."  *Hodge v. United States*, 554 F.3d 372, 378 (3d Cir. 2009) (quoting *Mayle v. Felix*, 545 U.S. 644, 650, 664 (2005)).  Accordingly, Polanco's first motion to supplement his § 2255 motion (D.E. 4), insofar as it seeks to add a ground for relief untimely raised, is denied.

Polanco's next motions to supplement his § 2255 motion, dating from July 2004 and January 2005, were based on the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).  (D.E. 5, 23.)  Polanco argues that *Blakely* affected the constitutionality of the Guidelines and therefore may impact his sentence, and contends that the holding of *Booker* should be applied retroactively to vacate his sentence. However, neither *Booker* nor *Blakely* applies retroactively.  *See Reinhold v. Rozum*, 604 F.3d 149, 154 & n.4 (3d Cir. 2010); *Gonzales v. Tafoya*, 515 F.3d 1097, 1110 (10th Cir. 2008). Polanco's conviction became final when he exhausted his direct appeals on October 7, 2002, well before either case was decided.  *Kapral v. United States*, 166 F.3d 565, 570 (3d Cir. 1999). Accordingly, the motions are untimely under 28 U.S.C. § 2255(f) and would otherwise be without merit.

4

Finally, Polanco asked to supplement his § 2255 motion in light of *Begay v. United States*, 553 U.S. 137 (2008), and *Chambers v. United States*, 555 U.S. 122 (2009), arguing that they show he is not a career offender under the Guidelines.  (D.E. 16.)  Polanco also filed other requests based on subsequent cases, such as *Descamps v. United States*, 133 S. Ct. 2276 (2013).  (D.E. 22.)  To the first of these requests, filed in February 2011, he attached the original judgment from his 1994 New Jersey aggravated assault conviction, which showed that he pleaded guilty to N.J.S.A. § 2C:12-1(b)(3) (1994) ("Recklessly caus[ing] bodily injury to another with a deadly weapon.") and not N.J.S.A. § 2C:12-1(b)(1) (1994) ("Attempts to cause seriously bodily injury . . . or causes such injury purposely or knowingly or . . . recklessly causes such injury . . . ."), as generally believed during his trial and on appeal.  (*See, e.g.*, A117.)

To the extent that he raises a *Begay* or *Chambers* claim, his supplements are untimely. He was required to pursue his claims within one year of each decision, but failed to do so.  *See* 28 U.S.C. § 2255(f)(3); *Dodd v. United States*, 545 U.S. 353, 357 (2005) ("An applicant has one year from the date on which the right he asserts was initially recognized by th[e Supreme] Court.").  He does not contend that he should be entitled to equitable tolling.  Further, Polanco does not explain his reliance in *Descamps* and similar decisions in his later filings.  They are therefore denied as untimely and otherwise without merit.[4]

**B. <u>Waiver of the Right to File a Collateral Attack</u>**

---

[4] The claims Polanco raises are not on all fours with *Begay*, whose "prohibition on counting reckless crimes as crimes of violence applies only in residual clause cases." *United States v. Marrero*, 743 F.3d 389, 398 (3d Cir. 2014).  "Aggravated assault" is an enumerated crime in the U.S.S.G. § 4B1.2 (2001) application notes, and therefore does not require the use of the residual clause addressed by *Begay*.  Even if the Court could reach the merits of the claim—passing through both untimeliness and waiver—Polanco has not made any effort to show that the crime of conviction did not "substantially correspond" to the generic offense of aggravated assault, *see id.* at 399–400, especially given the "significantly higher" error standard on collateral review, *see United States v. Frady*, 456 U.S. 152, 166 (1982).

Polanco's plea agreement included a conditional waiver of his right to file an appeal or collateral attack, including a motion under 28 U.S.C. § 2255, that challenged "the sentencing court's determination or imposition of the offense level," so long as the Court determined that Polanco's total offense level was equal to or less than that to which the parties stipulated.  (Plea Agmt., Schedule A, ¶ 9.)  Based on the sentencing guidelines stipulations, Polanco waived his right to file a motion under § 2255 if the sentencing court set the total offense level at 29 or lower, or, in the event the sentencing court found him to be a career offender, at 34 or lower. (*See id.* ¶¶ 8-9.)

The plea agreement also provided that any appeal or motion challenging Polanco's sentence or the manner in which it was determined that is not otherwise prohibited by the agreement would "be limited to that portion of the sentencing calculation that is inconsistent with or not addressed by [the] sentencing stipulation."  (*Id.* ¶ 9.).

Polanco's arguments fall squarely within the parameters of his waiver.  The sentencing court determined that he was subject to sentencing as a career offender, and that his total offense level was 34.  (*See* A7.)  As noted, Polanco waived his right to collaterally attack this determination as long as the total offense level was 34 in the event the judge did determine he was a career offender.  Thus, Polanco's first two arguments in support of his § 2255 motion, both challenging Bergrin's performance with respect to advising Polanco of the consequences of career offender status, are precluded by his waiver.  Jumping to Polanco's fifth argument, he contends that Bergrin provided ineffective assistance of counsel by failing to advise him of the consequences of his guilty plea so as to ensure that the plea was knowing and intelligent – specifically by advising him that he would not be designated a career offender because assault meant simple, rather than aggravated, assault.  But this constitutes a rephrased version of

Polanco's first two arguments insofar as the stipulations embraced the potential of being found a career offender.

Polanco's third and fourth arguments, that Bergrin provided ineffective assistance by failing to object during the plea colloquy to the government's alleged amendment of the indictment and by failing to object to the District Court's sentencing of Polanco on that allegedly amended indictment to a term in excess of the maximum applicable to the offense with which he was originally charged, are both premised on Polanco's legally incorrect argument that the indictment was amended.  These assertions arguably fall within the scope of Polanco's waiver as well, as they are, at bottom, challenges to the offense level that the sentencing court used and the sentencing calculations the court undertook.

Waivers of a criminal defendant's right to file an appeal or § 2255 motion are enforceable so long as "they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice."  *United States v. Mabry*, 536 U.S. 231, 236-37 (3d Cir. 2008).  Polanco contends that his plea, and it appears, the waiver encompassed in his plea agreement, were not entered into knowingly and voluntarily as a result of Bergrin's alleged ineffective assistance of counsel.  The record, however, establishes that Polanco was questioned about his understanding of the plea, the advice he received from his attorney, and – significantly – his understanding of the waivers outlined in the plea agreement.  (*See, e.g.*, A83-A99.)  For example, Judge Lechner asked Polanco early on in the plea hearing:

> Q:    Now, do you understand that under the terms of the plea agreement, if certain conditions are met, you cannot file a direct appeal or otherwise collaterally attack or attack in a collateral proceeding the sentence to be imposed in this case and under other circumstances the Government cannot appeal the sentence imposed?
>
> A:    Yes, your Honor.

. . .

Q:      Now, do you understand other than your waiver that we talked about before, under certain other circumstances you or the Government, or perhaps both of you may have the right to appeal a sentence I impose?

A:      Yes, your Honor.

. . .

Q:      Do you understand if you receive a sentence that is more severe than you expect to receive, you're still going to be bound by your plea and you will have no right to withdraw your plea?

A:      Yes, your Honor.

(A94; A95.)

In fact, at the very outset of the plea hearing, Bergrin informed the Court that Polanco was prepared to enter a plea; had been apprised of the statute, maximum sentence, and sentencing guidelines; and that his sentence would lie within the Court's discretion. Judge Lechner then asked whether "the plea provide[d] under certain circumstances [Polanco] waived his right to file an appeal or collaterally attack the sentence to be imposed," to which Bergrin answered it did. (A82-A83.) The Court ultimately found that Polanco "entered his plea in [sic] a voluntary basis," and that he "knew of the existence, understood the terms and agreed to the terms of the plea agreement." (A99-A100.)

Polanco indicated, by signing the plea agreement itself, that he had read and fully understood it, and that it fully set out his agreement with the government – and that neither the government nor his own attorney had made any additional promises or representations. (A68.) He further signed an application for permission to enter a guilty plea in which he certified that he understood that the plea agreement provides for a waiver of appeal of or collateral attacks on his sentence under certain circumstances. (A76.)

8

The plea hearing adequately gave Polanco notice of the waiver, and the arguments, viewed as framed, fall within the waiver.  Polanco was asked directly if he understood the terms of the agreement and if his entering into the agreement and stipulations was voluntary, and he answered affirmatively on both issues.

The Court will nonetheless entertain the arguments on the merits not out of any apprehension that Polanco is unfairly bound by his bargain, but rather out of its appreciation, after a careful review of the record and the specific arguments Polanco has advanced, that in entering the plea Polanco took a calculated risk and is bound by the results.  Put another way, Polanco's contentions are bound up in how his plea was negotiated, and examining the process inevitably leads to a discussion of the merits.  That being done, the Court is satisfied that Polanco has failed to demonstrate that a miscarriage of justice of constitutional proportions happened when he was found to be a career offender and sentenced to 275 months of imprisonment.  Any other finding would offend the principles behind the limited relief afforded in post-conviction proceedings.

**C.     Merits**

1)  Standard of Review

"A prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255.  Under Section 2255, the movant shall be released from custody if the sentence: "(1) was imposed in violation of the Constitution or laws of the United States; (2) was imposed by a court lacking jurisdiction; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack."  *Morelli v. United States,* 285 F. Supp. 2d 454, 458 (D.N.J. 2003) (Bassler, J.) (citing 28 U.S.C. § 2255).  Pro se § 2255 motions must be liberally

construed, *United States v. Garth*, 188 F.3d 99, 108 (3d Cir. 1999), and Polanco's allegations must be accepted as true unless clearly frivolous, *United States v. Travillion*, No. 12-4184, ___ F.3d ___, 2014 WL 3029837, at *6 n.23 (3d Cir. July 7, 2014).  A prisoner is entitled to relief under § 2255 only if the alleged error was a "a fundamental defect which inherently results in a complete miscarriage of justice." *Travillion*, 2014 WL 3029837, at *2 (internal quotation marks & citation omitted).  The Court may deny the § 2255 motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.  28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005).

Polanco's § 2255 motion asserts that he was provided ineffective assistance of counsel, contrary to the Sixth Amendment. To demonstrate a deprivation of the right to effective assistance of counsel, a defendant must show both that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

"Surmounting *Strickland*'s high bar is never an easy task."  *Ross v. Dist. Att'y of the Cnty. of Allegheny*, 672 F.3d 198, 210 (3d Cir. 2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).  To satisfy the first prong, counsel must have committed errors "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  To satisfy the second, the errors must have so prejudiced the client's case that the result of the proceeding effectively becomes unreliable.  If the petitioner cannot establish both prongs, then "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process," and the petitioner is not entitled to relief.  *Id.*

10

2)  Failure to Investigate Criminal History

Polanco alleges that Bergrin, his lawyer, failed to investigate his criminal history and advise him about the likelihood that he would be sentenced as a career criminal.  Polanco argues that had he known that he would be classified a career offender, he would not have accepted the government's plea offer.  The record shows that Bergrin claimed that he, as Polanco's attorney, relied on a statement of the federal prosecutor that the 1994 conviction that showed up on Polanco's criminal record was for simple assault, not aggravated assault.  But that criminal history record was part of the record behind the plea and it was available to both Bergrin and Polanco; it reflected that in 1994 Polanco was found guilty of violating N.J.S.A. § 2C:12-1(b) (1994), the subsections of which all constitute "aggravated assault."

Under the Guidelines in effect at the time of Polanco's sentence, a defendant could be designated a career offender if: (1) he was 18 or older at the time of the offense of conviction; (2) the offense of conviction was a felony and either a crime of violence or a controlled substance offense; and (3) the defendant had two or more prior felony convictions for either a crime of violence or a controlled substance offense.  U.S.S.G. § 4B1.1 (2000).  An aggravated assault conviction was a "crime of violence" under this portion of the Guidelines, but a simple assault was not.

Key to Polanco's arguments now is his status in the state court at the time he entered his federal plea.  The year before, he had pleaded guilty to a charge of resisting arrest, and was awaiting sentencing by the state judge.  The record  reveals that, in the lead-up to Polanco's sentencing, Bergrin maneuvered to protect against a career offender designation – which was hanging over Polanco's head because of the specific sentencing stipulations in the plea

agreement – by withdrawing the state court guilty plea on the premise that eliminating that conviction would alter Polanco's criminal history for federal sentencing purposes.

Bergin also filed two motions before the scheduled federal sentencing.  The first, filed on or about June 26, 2001, was a motion to withdraw Polanco's guilty plea to the federal indictment.  There Bergrin argued that relying on the criminal history information provided and the statements made by the Assistant U.S. Attorney, he counseled Polanco that the latter would not be subject to career offender designation. (*See* A111-A130.)  As a result, Bergin argued, Polanco's plea was not voluntary.  (*See id.*)  In the second motion, filed on July 12, 2001, four days before the rescheduled sentencing date, Bergin sought a downward departure.  (*See* A142-A152.)

At the sentencing hearing, which Judge Lechner ultimately held on July 26, 2001, Bergrin maintained that the proper interpretation of Polanco's criminal history was that it reflected a prior drug conviction and the 1994 aggravated assault conviction, which according to Bergrin was not a "crime of violence."  Judge Lechner rejected that position, agreeing with the probation department's finding that the 1994 conviction constituted a crime of violence under the guidelines. This gave rise to Bergrin's insistence that when he was counseling his client about taking the plea agreement, the only condition pertinent to career offender status was whether the state court would permit Polanco to withdraw his plea in state court to the resisting arrest charge. That having occurred, Bergrin argued that in his estimation, all systems were go for a sentence at level 29.

Judge Lechner found that there was insufficient support for a conclusion that Bergrin had advised Polanco that he could definitively expect to escape designation as a career offender and that the only obstacle to non-career offender status would be denial of the motion to withdraw

the state court guilty plea for the 2000 offense.  As an initial matter, Judge Lechner asked if Bergrin had spoken with Polanco about the underlying facts of the at-issue assault conviction. Bergrin responded that he had.  Hearing this, Judge Lechner pointed out that Bergrin knew the offense "couldn't possibly be a simple assault.  [Polanco] attacked two other people with baseball bats, sent one to the hospital and [the] other one had to have reconstructive surgery," (A13, at 6:9-15.)  Further, Judge Lechner described the plea allocution before the state judge as "meticulous," with Polanco having represented to the Court that "he understood everything," and Bergrin having represented that the plea was entered on a knowing, intentional basis.  (A13, at 6:17-21.)  Moreover, Judge Lechner noted that Bergrin had submitted as factual support only his own affidavit.  (A17 ("All I have on this is your affidavit, an affidavit from no one else."; *see also* A12 (noting stipulations in plea agreement as to offense level, and "[o]n top of that, I received no affidavit from your client with regard to this, only an affidavit from you").)

Significantly, the record shows that Polanco had accepted the possibility of career offender status in the event that Judge Vena in state court denied the motion to withdraw the plea:

THE COURT:          Excuse, please.

How do you respond to the fact that your client and the Government specifically negotiated stipulation eight [of the plea agreement] and that stipulation eight embraces the concept of the career offender status for your client?

MR. BERGRIN:        Paragraph number eight, your Honor, was specifically put into this particular plea agreement based upon the facts that at the time that Mr. Polanco was considering the entry of the plea agreement, Judge Vena had not granted our motion for withdrawal of the plea of guilty in state court.

He was informed of my belief and as well as the United States Attorney's belief, because he contacted the assistant prosecutor in this case, Michael Morris, and we went over the facts of the plea in

state court and the fact that we were firmly convinced that Judge Vena would allow withdrawal of the plea, but if he did not allow withdrawal of the plea, then Mr. Polanco, according to our belief at that  time, would be considered and rendered a career criminal. That's why we put in paragraph number eight.

(A16.)

Judge Lechner bristled at the thought that career offender status rested in the hands of a state court judge's discretion about the plea before that state court judge, when Polanco had already pleaded guilty to the federal offense:

THE COURT:       So a state court judge can decide what we do?

MR. BERGRIN:     Absolutely not, Your Honor.

THE COURT:       You're right, the fact of the matter is you and your client specifically addressed the issue.  You agreed that it would be a 29 unless he were found to be a career offender.  At that point, it would be a 34.  That was specifically addressed. (A17.)

Without dispute, then, Polanco entered the plea agreement fully advised that there was a possibility that he could be deemed a career offender.  The stipulation was broadly worded: "*In the event that the sentencing court determines that Ronny Polanco is a career offender* within the meaning of [Section] 4B1.1, the applicable Guidelines Total Offense Level is 34." (A70 (emphasis added).)  What occurred was that Bergrin got Polanco by the Scylla of the year-old conviction in state court only to find that there was a Charybdis in the 1994 conviction.  The plan to artfully lower Polanco's criminal history category worked, but only partially, because the import of his earlier conviction remained.  Strategy aside, Polanco cannot dispute that when he entered his federal plea, he had three state felony convictions.

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."  *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).  When ineffective assistance claims are made under circumstances in which a defendant pled guilty, the *Strickland*

test – requiring a showing of error and prejudice – applies, with prejudice established if "there [was] a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). There are other kinds of prejudice that can flow from a plea-stage ineffectiveness claim, as explained in *Lafler* and *Missouri v. Fyre*, 132 S. Ct. 1399 (2012), but it is evident that Polanco is using the *Hill* formulation by arguing that he would have gone to trial if Bergrin had correctly advised him.

Polanco would have it that if this Court accepts Bergrin's representation that he misinterpreted the seriousness of the 1994 assault conviction, the inquiry is ended. But the law requires more: Polanco must demonstrate a "reasonable probability" that, had his counsel correctly apprised him of the probable sentence, he would have insisted on going to trial. On this record, Polanco cannot persuasively point to his effort to withdraw his guilty plea to show that he was "insist[ing] on going to trial rather than accept the plea." The history of the negotiations makes it all too clear that motions to withdraw guilty pleas were part of the defense strategy to alter his criminal record and avoid career criminal designation, strategy that has nothing to do with going to trial, but rather deals with the effect on sentencing of pleading guilty. In any event, the law holds that "the mere fact that a defendant has made a motion to withdraw his plea of guilty [does not] dispositively establish[] that in the absence of substandard advice from his attorney he would have declined to plead guilty," as "a defendant's request to withdraw his plea of guilty" does not always "reflect a genuine desire to go to trial." *Gonzalez v. United States*, 722 F.3d 118, 133 (2d Cir. 2013).

Polanco fails to demonstrate anywhere that he had a meaningful defense. Instead, he has provided just his own post-hoc, bald assurances that he never would have accepted any

agreement that provided career criminal status.  But he that is exactly what Polanco did, as evidenced in the stipulations in the plea agreement where he signed on to a base offense level of 34 for sentencing purposes if Judge Lechner determined he was a career offender based on his past convictions.

If what Polanco was doing was counting on strategic maneuvers to dodge what was a patent risk recognized by the defense and the prosecution at the time the stipulations were negotiated, the failure of those maneuvers cannot amount to grounds for post-conviction relief now.  Rather, Polanco has demonstrated at best that he and his attorney were too smart by half, a far cry from his attorney failing to provide competent representation and nowhere close to demonstrating to this Court that he would have insisted upon going to trial rather than enter a plea to this serious offense with its ten year mandatory minimum sentence.

3)  Failure to Advise on Guideline Designations

Polanco's next, and related, claim of ineffective assistance of counsel is that Bergrin failed to properly advise him of how he would be designated under the Guidelines.  This claim is sufficiently intertwined with Polanco's first argument that calling it an independent argument is a misnomer.  Consequently, for the reasons set out above, this claim fails.

4)  Failure to Object During Plea Colloquy

Petitioner's third argument in support of his ineffective assistance of counsel claim challenges Bergrin's purported failure to object during the plea colloquy to the government's alleged amendment of the indictment.  Polanco alleges that he was indicted under 21 U.S.C. § 841(a)(1), but was sentenced under 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii).  He argues that he should have been sentenced under what he calls the "catch-all" provision of 21 U.S.C. § 841(b)(1)(C) (2000), which allowed for a maximum penalty of twenty years in prison.

The indictment in this case clearly charges that Polanco "did knowingly and intentionally distribute, and possess with intent to distribute more than 50 grams of a mixture and substance containing cocaine base, that is, crack cocaine, a Schedule II narcotic drug controlled substance." This language is followed by a citation to 21 U.S.C. § 841(a)(1).  Although the indictment does not mention 21 U.S.C. § 841(b)(1)(A)(iii) (2000), which specifically addresses "50 grams or more of" crack (and establishes the penalties for that quantity), "neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction" unless "the defendant was misled and thereby prejudiced."  Fed. R. Crim. P. 7(c)(2). Polanco was not misled or prejudiced because the essential element of the subsection that increased the maximum penalty—drug quantity—was unambiguously charged in the indictment. *See Jones v. United States*, 526 U.S. 227, 243 n.6 (1999) ("[A]ny fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment . . . .").

Further, in the plea colloquy, Polanco admitted under oath specific facts that fit within the charging document and do not "amend" it.  His admissions were made in response to questions posed by the prosecutor that had been prepared in advance, and they established without question that on one occasion he sold crack cocaine in an amount that exceeded 50 grams, and that in total over a three week period he sold 97.1 grams of crack cocaine, along with 5.4 grams of heroin, to the same customer (who turned out to be a confidential informant).  Polanco was sentenced based on his conviction of the charge for which he was indicted; the questions posed established

his guilt.[5]    Bergrin was under no obligation to object to the questions, which were straightforward and expected.

Indeed, the transcript of the plea hearing reflects the care with which Judge Lechner conducted this portion of the proceeding.  After the prosecutor posed the factual basis questions and Polanco gave his answers, the following exchanges took place between the court, Polanco and Bergrin:

| THE COURT: | All right.  Is the Government in a position to represent to me it could prove this charge and each of its elements beyond a reasonable doubt without the testimony of the defendant? |
| MR. BORINSKY: | Yes, your Honor. |
| THE COURT: | Mr. Polanco, you've told me you read the indictment, correct? |
| MR. POLANCO: | Yes. |
| THE COURT: | And you've talked about it with your attorney? |
| MR. POLANCO: | Yes. |
| THE COURT: | He's explained it to you? |
| MR. POLANCO: | Yes. |
| THE COURT: | He's answered all your questions? |
| MR. POLANCO: | Yes, your Honor. |
| THE COURT: | You understand it? |
| MR. POLANCO: | Yes. |
| THE COURT: | Is it fair to say then that you knowingly, willfully and intentionally committed the conduct set forth in that indictment? |

---

[5] Polanco's suggestion that Bergrin should have objected to the questions ignores the reason for the questions:  they establish the factual basis upon which a judge can determine guilt and accept the plea.  Factual basis questions are required, as opposed to exploratory or adversarial; they are not occasions for counsel to make objections.

| | |
|---|---|
| MR. POLANCO: | Yes, your Honor. |
| THE COURT: | Now, in light of all the questions I've asked you, in light of all the questions the Government's attorney has asked you, do you still want to enter a plea of guilty? |
| MR. POLANCO: | Yes, your Honor. |
| THE COURT: | When did you decide to enter this plea of guilty? |
| MR. POLANCO: | When I had signed the plea agreement. |
| THE COURT: | And why did you decide to enter this plea of guilty, because, in fact, you are guilty or for some other reason? |
| MR. POLANCO: | Because I am guilty. |
| THE COURT: | How do you plead now, guilty or not guilty? |
| MR. POLANCO: | Guilty, your Honor. |
| THE COURT: | Counsel, are you satisfied this plea has been entered entirely voluntarily and entered by your client with full knowledge of all his rights and responsibilities? |
| MR. BERGRIN: | I am so satisfied. |

(Plea Tr. 19:6–20:18, A98–A99.)

The Court is fully satisfied that this claim of ineffective assistance of counsel fails.

5)  Failure to Object to Sentence Above Statutory Maximum

Polanco next contends that he was provided ineffective assistance of counsel claim because Bergrin failed to object to a sentence in excess of the maximum for the offense for which he was indicted, 21 U.S.C. § 841(a)(1). This claim presumes that the indictment was in fact amended, an erroneous assumption the Court has already rejected; further, as shown in the Rule 11 form and elsewhere, Polanco was well aware that the statutory maximum for his conduct was life in prison.  Polanco's recasting of this claim as a sentencing illegality is likewise rejected.

19

6)   <u>Failure to Advise of Consequences of Guilty Plea</u>

Polanco claims that his attorney failed to apprise him adequately of the consequences of pleading guilty.  This claim is simply a recasting of Polanco's first and second arguments; all three challenge the sufficiency of Bergrin's advice to Polanco with respect to the consequences of pleading guilty.  As detailed above, Polanco cannot, on the one hand, sign a plea agreement acknowledging that he has been advised of the consequences of his plea and the potential sentence to which the plea exposed him and subsequently represent the same thing under oath to the Court – and on the other hand, cry foul about his attorney's advice when he is sentenced in a way contemplated by the very language of the plea agreement.  It is difficult to distinguish this argument from Polanco's first and second arguments, as they all directly address the consequences of the advice that Bergrin provided to Polanco prior to the entry of a guilty plea. Seen unvarnished, Polanco's argument is not that Judge Lechner sentenced him unconstitutionally because he should not have found him career offender eligible under the guidelines.  Polanco is saying that his lawyer planned to change the import of the prior convictions that were known by manipulating their number down, or showing the court that the convictions were less significant.  He establishes by this contention that Bergrin was playing a high stakes game (Polanco never denies his guilt of the serious drug crime he pleaded to) and was using sophisticated sentencing strategy; he establishes, in other words, that Bergrin was highly effective in scoping out his sentencing exposure and perhaps with a different judge might even have succeeded in manipulating it in Polanco's favor.

Irony aside, the claim must fail because the reasons set forth for the denial of Polanco's claim under the first and second grounds apply with equal force here.  Accordingly, Polanco's

claim of ineffective assistance of counsel for failure to advise of the consequences of pleading guilty is denied.

### D. Request for Appointment of Pro Bono Counsel and Subsequent Applications for Release

On September 6, 2013, Polanco filed a request for the appointment of counsel, stating that he was previously assisted in his filings by another inmate who is no longer available to him. (D.E. 21.)  In view of the Court's resolution of Polanco's motion, this application is moot.  To the extent that they request independent relief, Polanco's recent applications (D.E. 24, 25) are also denied as moot.

### III.     Conclusion

The claims in Polanco's 28 U.S.C. § 2255 motion all pertain to an extensive record which focused at length, affidavits included, on the process and reasons behind counsel's representation of Polanco.  That well-developed record "show[s] conclusively" that Polanco is entitled to no relief from his conviction and sentence.  *Booth*, 432 F.3d at 545–46 (requiring no evidentiary hearing if "the motion and files and records of the case show conclusively that the movant is not entitled to relief").  Thus, for the foregoing reasons, Polanco's 28 U.S.C. § 2255 motion and all associated filings are denied without an evidentiary hearing.  No certificate of appealability shall issue because Polanco has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  An appropriate order will issue.


Date: July 11, 2014

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.